STEPHEN CANTRELL, plaintiff in error, *vs.* JAMES M. COBB, defendant in error.

A bill was filed to set aside an award of arbitrators, on the ground of a " legal accident," without stating in what particular that legal accident occurred, and praying for an injunction to restrain the collection of the purchase-money due for a tract of land sold by the defendant to the complainant, of which the latter was in possession under a warranty deed made by the defendant, on the ground that the

complainant has good reason and does verily fear, that the title and warranty to at least a portion of the land will fail, because a suit has been instituted on the equity side of the Court, against the defendant and other parties, in relation to the division of the land, and that the defendant is a non-resident of the State. There was a demurrer to the bill for want of equity, and a motion to dissolve the injunction on the filing of the defendant's answer, both of which were overruled by the Court below, and the defendant excepted:

*Held,* That the allegations in complainant's bill, that the award complained of, which had been made the judgment of the Superior Court, was a "legal accident," without more, was not sufficient, in law, to set aside the award.

*Held, further,* That a Court of equity will not enjoin the vendor of a tract of land from the collection of the purchase-money due therefor by the vendee, when the latter is in possession of the land, on the ground of a bare fear of a failure of the vendor's title; the complainant must allege such facts in his bill as will *affirmatively* show such a prior incumbrance or outstanding title as will defeat the vendor's title, under which the vendee holds possession of the land.

Equity and Equity Pleading. Injunction. Before Judge KNIGHT. Dawson Superior Court. April Term, 1871.

David J. Roe was guardian of Mary A. Cantrell, and was one of her grand-father's administrators. Stephen Cantrell and others were, with her, heirs of her grand-father. In March, 1867, she filed a bill against Roe for an account and settlement with her, and prayed that he should sell her grand-father's lands and pay her her share of their proceeds. By the exhibited returns of Roe, as such administrator, it appeared that $4,900 00, in cash, had been set apart to her, and the land had been divided between Stephen A. Cantrell and the other adult heirs.

Pending this bill, to-wit, on the 6th of September, 1867, Stephen Cantrell sold his part of this land to James M. Cobb for $4,750 00, of which $2,500 00 was paid in cash, and for the balance he took Cobb's note, due the 25th of December, 1869, "to be paid in greenback at forty per cent. discount, or in greenback at one dollar and forty cents for one dollar in par money," and made him a warranty deed therefor. A few days thereafter, Mary A. Cantrell's said bill was

amended, by charging that the said division of the land of her grand-father was fraudulent, and that Stephen was about to remove from this State, and praying injunction against the sale of said land by any of said adult heirs, and for *ne exeat* against Stephen Cantrell. The Chancellor ordered these writs to be issued. The sheriff did not find Stephen, but saw his wife in the act of leaving the State, handed her the copy-bill, and made his return according to the facts. Cobb made the following payments on said note: $253 00 on the 24th of April, 1869, $173 60 on the 11th of January, 1870, and $200 00 on the 3d of May, 1870.

In July, 1870, Cobb and Stephen Cantrell's agent differed as to what was the balance due on said note, and submitted this difference to arbitration for final decision. They awarded that there was due on the note, on the 16th of July, 1870, $1,310 68 and $17 80 interest. At September Term, 1870, of the Superior Court of said county, that award was made the judgment of said Court.

In October, 1870, Cobb filed his bill in equity against Stephen Cantrell and his agents, praying an injunction against the enforcement of said judgment. This bill averred the foregoing facts and the following: At the time of the trade, Cobb thought Stephen Cantrell's title to said land perfect, but now he has "apprehension" that the title "stands on precarious grounds" and "may fail." Stephen Cantrell, immediately after said sale, moved to Missouri, and there invested his money in land, the title to which he took in some other person's name; and he is insolvent, besides being out of the jurisdiction of this Court. The apprehension is, that Mary A. Cantrell (now Mrs. Bowen) will recover this land. The arbitrators gave an award against him for nearly $200 00 more than was due on said note; he was ignorant and made no objection to the award being made the judgment of the Court. "The obtainment of the submission, award and judgment is a legal accident," and said "award and judgment are illegal," because the amount is too large; and

when he consented to said judgment he did not know he could file exceptions to the award. When he bought the land, Stephen Cantrell told him he could have his own time to pay the said note, and should never be sued upon it, but said agent now presses for the payment of said judgment.

Judge Knight ordered the injunction to issue. Cantrell's counsel demurred to the bill for want of equity. This demurrer was overruled. Cantrell then answered the bill. He said that the division of the said estate was pursuant to a judgdment of a Court of competent jurisdiction; that he took possession under it and remained in possession about eighteen years, and then sold to Cobb, who had been in possession ever since. Cobb was present when the award was made the judgment of the Court, and it was done by his approval; he then having no objection to it. Since that, Cobb had been trying to raise the money to pay the judgment, and now is only pretending fear of his title, to get time. He said, as to Mary A. Cantrell's bill, that he was not served, that there could be no recovery of the land for the reason aforesaid, and if she did recover, her guardian was amply responsible.

With these answers, Cantrell's counsel procured affidavits showing that since the judgment Cobb had spoken of it as a debt which he must pay, and that he had said his title to said land was good. With these, Cantrell's counsel moved to dismiss the bill and dissolve said injunction, because the same was improvidently granted, there being no equity in the bill, or if there were, it was sworn off. The Chancellor refused to dissolve the injunction or dismiss the bill.

This refusal to dismiss the bill and to dissolve said injunction are assigned as error.

A. P. BELL, for plaintiff in error, cited Rev. Code, secs. 3071, 3074; 35 Ga. R., 213; 2d, 275; 37th, 585; 38th, 312 and 135 and 144; 41st, 10.

WEIR BOYD; M. L. SMITH, for defendant, as to fraud, accident and mistake, cited Revised Code, secs. 3057, 3062,

3074; 2 Story's Eq. Jur., sec. 826; 26 Ga. R., 415; and said this was matter of discretion for the Chancellor: 34 Ga. R., 53, 282; 35th, 216; 20th, 76; Bacon's Dig., 220, item 37; 223, 61.

WARNER, Judge.

It was error in the Court below in overruling the demurrer to the complainant's bill, and in overruling the motion to dissolve the injunction, on the statement of facts disclosed in the record.

Let the judgment of the Court below be reversed.